IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| NORRIS ALLEN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 4:20-cv-00198 |
| | ) | |
| EXPRESS COURIER | ) | |
| INTERNATIONAL, INC., and EMP | ) | |
| LSO HOLDING CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT WITH SUPPORTING BRIEF

Plaintiffs and Defendants, Express Courier International, Inc. d/b/a LSO Final Mile and EMP LSO Holding Corporation, hereby request approval of the settlement reached in this case and in support thereof state as follows:

### I.     BACKGROUND

Plaintiffs are former opt-ins to a Fair Labor Standards Act ("FLSA") collective action filed in February 2016 in the Western District of Arkansas, *Harris, et al. v. Express Courier International, Inc.*, Case No. 5:16-cv-05033-TLB. After the case had been pending for over a year, Judge Brooks decertified the collective action. *Harris*, 2017 WL 5606751 (W.D. Ark. Nov. 21, 2017). In doing so, the court not only found that Plaintiffs had failed to articulate a method for demonstrating that they were misclassified as independent contractors, but had also failed to demonstrate "a feasible method for establishing which, if any, class member was paid below the

1

minimum wage or was denied overtime pay in violation of the FLSA." *Id.* at *6. After having their claims dismissed, Plaintiffs filed the present suit.

This case is one of a group of thirteen cases originally filed in thirteen different courts following the *Harris* decertification (collectively, the "Mass Actions").[1] Those cases, which have now been transferred to the Southern District of Texas for coordination of settlement approval and dismissal, are listed here:

    A. *Arroyo v. Express Courier Int'l., Inc.*, No. 4:18-cv-00010;

    B. *Barber v. Express Courier Int'l., Inc.*, No. 4:20-cv-00271;

    C. *Carter v. Express Courier Int'l., Inc.*, No. 4:19-cv-01124;

    D. *Nicks v. Express Courier Int'l., Inc.*, No. 4:20-cv-00250;

    E. *Acklin v. Express Courier Int'l., Inc.*, No. 4:20-cv-00162;

    F. *Campbell v. Express Courier Int'l., Inc.*, No. 4:20-cv-00713;

    G. *Barnette v. Express Courier Int'l., Inc.*, No. 4:20-cv-00210;

    H. *Brandon v. Express Courier Int'l., Inc.*, 4:20-cv-00455;

    I. *Bell v. Express Courier Int'l., Inc.*, No. 4:20-cv-00184;

    J. *Ryte v. Express Courier Int'l., Inc.*, No. 4:20-cv-00238;

    K. *Baker v. Express Courier Int'l., Inc.*, No. 4:20-cv-00796;

    L. *Bascomb v. Express Courier Int'l., Inc.*, 4:20-cv-00420; and

    M. *Allen v. Express Courier Int'l., Inc.*, No. 4:20-cv-00198.

---

[1] The Mass Actions originally were filed on behalf of more than 700 plaintiffs, but through the parties' discovery and negotiations, approximately 71 plaintiffs stipulated to dismissal with prejudice of their claims, based primarily on statute of limitations barring their claims. There are 676 plaintiffs with pending claims in the Mass Actions.

Plaintiffs in each of the Mass Actions allege causes of action under the FLSA seeking overtime and/or minimum wages; some plaintiffs also allege violations of state minimum wage laws.

On January 21, 2019, the parties mediated the Mass Actions before Hunter Hughes III in Atlanta, Georgia. As a result of mediation, Plaintiffs and Defendants agreed to the terms of a global settlement, which covers 676 plaintiffs in this case and each of the Mass Actions. The terms of the global settlement have been reduced to a confidential settlement agreement and release ("Agreement") executed by Defendants, along with counsel for Plaintiffs and Defendants. *See Exhibit A*.[2] Plaintiffs have retained a third-party settlement administrator, Simpluris, to send the written settlement agreement and release to each of the 676 plaintiffs in the Mass Actions for signature.

## II.   ARGUMENT & AUTHORITIES

**A.   The Settlement Is a Fair Compromise Based on a Bona Fide Dispute.**

Private settlements of FLSA claims typically require approval by a court or the Secretary of Labor to ensure enforceability. *See Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982). In *Bodle v. TXL Mortgage Corp.*, the Fifth Circuit noted that it has "excepted, from this general rule, unsupervised settlements that are reached due to a bona fide FLSA dispute over hours worked or compensation owed." 788 F.3d 159, 165 (5th Cir. 2015) (citing *Martin v. Spring Break '83 Productions, LLC*, 688 F.3d 247, 255 & 257 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 795 (2012)).

---

[2] In compliance with the confidentiality portions of the Agreement, the parties have filed a motion for leave to file the Agreement under seal. ECF No. 45.

3

Accordingly, in the Fifth Circuit, private settlements are allowed, and approval is unnecessary, in cases involving bona fide disputes regarding the hours worked or compensation due.

Nevertheless, courts may approve an FLSA settlement in contested litigation to resolve a bona fide dispute between the parties over FLSA coverage and may dismiss the suit after considering the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d. at 1352-54; *Shaw v. CAS, Inc.*, No. 5:17-cv-142, 2018 U.S. Dist. LEXIS 136394, at *3 (S.D. Tex. Jan. 31, 2018). Courts typically rely on the adversarial nature of litigation as an indicator of a settlement's fairness. *Lynn's Food Stores*, 679 F.2d. at 1354. If the settlement reflects a reasonable compromise over contested issues, the court may approve it to promote the policy of encouraging settlement of litigation. *Id*.

### 1. The Settlement Is the Product of Contested Litigation.

The compromise in this case is the product of contested litigation, which began with the filing of *Harris* in February 2016, decertification of the *Harris* conditionally certified collective action in November 2017 and filing of Plaintiffs' individual claims in each of the Mass Actions in January 2018. Because Plaintiffs were independent contractors, Defendants assert that Plaintiffs were not subject to the FLSA's minimum wage or overtime requirements and denied that Plaintiffs were entitled to any overtime pay or other relief.

The Parties' attorneys conducted an investigation into Plaintiffs' claims including (a) taking 19 depositions in the *Harris* case; (b) exchanging written discovery and responses, including interrogatories and requests for production served

4

on LSO and more than 100 Plaintiffs; (c) inspecting and analyzing more than 80,000 pages of documents produced in the Mass Actions; (d) analyzing the legal positions taken by the parties, including damages alleged by Plaintiffs; (e) research of the applicable law with respect to the parties' claims and defenses; (f) exchange of mediation statements and data in connection with mediation; and (g) participating in a full-day mediation with Hunter Hughes, a nationally recognized wage and hour mediator. The mediation and follow-up discussions thereto resulted in the Agreement.

The parties and their attorneys had opportunities through the litigation to analyze and assess (1) the pertinent factual and legal issues, (2) the strengths and weaknesses of the claims and defenses at issue in the case, and (3) the risks and benefits of continued litigation. Based on those assessments, the parties agreed to a mutually acceptable settlement of Plaintiffs' claims with the assistance of a neutral mediator.

**2.    The Parties' Bona Fide Disputes Over Misclassification, Liability, and Damages.**

Defendants assert and Plaintiffs deny that they (1) were properly classified as independent contractors (2) not subject to the minimum wage or overtime requirements of the FLSA, and (3) compensated for all hours worked. The parties also dispute whether Plaintiffs can recover liquidated damages, if their recovery would be limited to two years or would extend to three years, and whether their claims are barred by the statute of limitations. *See, e.g., Sarabia v. Spitzer Indus.*, 2018 WL

5

6046327, at *3 (S.D. Tex. Nov. 19, 2018) (in FLSA collective action settlement, bona fide dispute existed because, in part, the parties disputed whether plaintiffs were independent contractors or employees, whether defendant willfully violated the FLSA when it failed to pay overtime, and number of hours that the class members worked). Accordingly, the Court should conclude that there are bona fide disputes over misclassification, FLSA liability, and proof of damages.

### 3. The Parties' Compromise Is Fair and Reasonable

The Mass Actions involve individual wage and hour claims of 676 individuals, each of whom have the burden of proof to establish by a preponderance of the evidence his or her status as an employee, along with liability and damages. *See, e.g., Sarabia.* 2018 WL 6046327, at *4 (finding settlement reasonable, given "the number of critical issues in dispute, including whether Plaintiffs were independent contractors or employees"). If the litigation were to continue, the parties would be required to expend a great deal of time and expense in completing discovery, filing and responding to dispositive motion(s), and trial.

The litigation of the Mass Actions would result in lengthy and expensive litigation. The settlement provides a certain outcome for all of the parties and saves them and the Court the time and expense associated with conducting a trial. *See, e.g. Bouchard v. DXP Enters.*, 2016 WL 10721819, at *1 (S.D. Tex. Oct. 27, 2016) (finding settlement terms "particularly reasonable considering that the payment is promised in a sum certain, without the uncertainties of litigation[,] . . . without risking losing the liability issues, and without the delays of trial and appeal."). These benefits are

particularly meaningful when the total recovery, if any, may be an amount which would not justify the extensive time and costs for attorneys' fees resulting from protracted litigation.

The Parties' compromise at mediation was the result of arms-length negotiations by experienced, capable attorneys on both sides. Both parties' counsel have extensive familiarity with counseling clients regarding wage and hour disputes, as well as litigating FLSA claims in federal court. Under these circumstances with experienced counsel and a neutral mediator helping the parties reach a mutually-agreeable compromise, a presumption of fairness should attach to the agreement. *See Collins v. Sanderson Farms, Inc.,* 568 F. Supp. 2d 714, 720 (E.D. La. 2008) ("The presence of attorneys representing [ ] plaintiffs, and the filing of a lawsuit, makes the likelihood of the sort of pressured 'settlement' at issue in *Lynn's Food Stores* much lower"); *In re BankAmerica Corp. Securities Litigation*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (court should consider the unique ability of counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to settlement reached in arms-length negotiations between experienced, capable counsel).

Under the terms of the Agreement, Plaintiffs are notified and acknowledge that they are waiving and releasing their claims under the Fair Labor Standards Act, as amended (the "FLSA"), 29 U.S.C. § 201, *et seq.*, together with all other state and federal wage and hour claims. Based on their knowledge of the case and the applicable law, counsel for Plaintiffs have stipulated that the Agreement reached by

7

the parties represents a fair and equitable settlement and resolution of Plaintiffs' claims, including Plaintiffs' claims for unpaid minimum wage and overtime compensation. *See Exhibit A*, Art. III, Sec. 2. Although the Court is not bound by the counsel's opinion, their opinion is nonetheless entitled to "great weight." *In re BankAmerica*, 210 F.R.D. at 702.

Finally, the public policy in favor of settlements, particularly in cases where substantial resources can be conserved by avoiding the time, cost and rigor of protracted litigation, further supports a presumption of fairness in this case. *See Lynn's Food Stores*, 679 F.2d at 1354 (recognizing policy of encouraging settlement of FLSA litigation); *Sarabia*, 2018 WL 6046327, at *3 (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 720 (E.D. La. 2008) (internal citations omitted). ("[T]he Court must keep in mind the strong presumption in favor of finding a settlement fair, and remain aware, as the parties must also be, that a settlement is compromise, a yielding of the highest hopes in exchange for certainty and resolution.").

## III.   CONCLUSION

Because the parties' compromise reflects a fair and reasonable resolution of a bona fide dispute over FLSA coverage and compensation due, this Court should approve it to promote the policy of encouraging settlement of litigation.

Respectfully submitted,

| | |
|---|---|
| /s/ Josh Sanford | /s/ Emily A. Quillen |
| Josh Sanford | Emily A. Quillen |
| josh@sanfordlawfirm.com | equillen@scopelitis.com |
| Texas Bar No. 24077858 | State Bar No. 24045624 |
| SANFORD LAW FIRM, PLLC | SCOPELITIS GARVIN LIGHT |
| One Financial Center |    HANSON & FEARY, P.C. |
| 650 S. Shackleford, Suite 411 | 777 Main Street, Suite 3450 |
| Little Rock, Arkansas 72211 | Fort Worth, Texas 76102 |
| Telephone: (501) 221-0088 | Telephone: (817) 869-1700 |
| Facsimile: (888) 787-2040 | Facsimile: (817) 878-9472 |
| **ATTORNEYS FOR PLAINTIFFS** | **ATTORNEYS FOR DEFENDANTS** |